FILED IN CHAMBERS
U.S.D.C. Atlanta
JUL 2 5 2012
JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, | : | MOTION TO VACATE |
| BOP No. 46600-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:10-CV-4-WBH-ECS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:96-CR-164-1-WBH-ECS |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE**

I.
**Summary**

On November 10, 2010, the Honorable Willis B. Hunt entered an Order denying all but one of the grounds for relief asserted by David Johnson in the motion to vacate, set aside, or correct sentence filed by counsel on behalf of David Johnson under 28 U.S.C. § 2255. See [Doc. Nos. 157, 165]. This case was referred to the undersigned "for a hearing and a report and recommendation solely on the issue of whether Mr. Johnson's trial counsel properly advised him regarding acceptance of the Government's plea offer." [Doc. No. 165 at 13]. Having held an evidentiary hearing [Doc. No. 170] on February 1, 2012, and reviewed the post-hearing briefs submitted by Mr. Johnson's post-conviction counsel [Doc. Nos. 173, 178] and the Government [Doc. No. 176], the undersigned finds that Mr. Johnson

was adequately advised, **RECOMMENDS** that the remaining ground for relief in his § 2255 motion be **DENIED**, and **RECOMMENDS** that a certificate of appealability be **DENIED** as to all grounds for relief.

## II.

### Background

Judge Hunt's Order comprehensively recites the history of this case. [Doc. No. 165 at 2-4]. Suffice it to say here that in 1997 Mr. Johnson was indicted on six counts of bank robbery and six counts of carrying or using a firearm in connection with those bank robberies. Mr. Johnson was evaluated and found to be mentally competent to stand trial. [Doc. 56]. Although he faced a mandatory minimum sentence of 105 years on the firearms counts alone, Mr. Johnson rejected a plea offer of 25 years. At trial Mr. Johnson was represented by appointed counsel. After a jury convicted him on all counts, Mr. Johnson was sentenced to a term of imprisonment of slightly more than 113 years (105 years on the six firearms counts and 100 months for the six bank robberies). The convictions and sentence were upheld on appeal. See United States v. Johnson, 295 Fed. App'x 342 (11th Cir. 2008). Mr. Johnson's family retained post-conviction counsel, and, on January 4, 2010, Mr. Johnson filed the instant motion, attaching a letter written to his counsel stating that "I would of taken a plea-bargain from the court but I

2

did not understand that the sentence was going to be 113 years given to me if I did not take the plea bargain." [Doc. No. 157-1 at 2].[1]

### III.

### **Evidentiary Hearing**

At the evidentiary hearing before me, Mr. Johnson, Carolyn Primrose (his mother), and Michael John Trost (his trial attorney) testified. [Doc. No. 170]. On the basis of that testimony and other material in the record, the undersigned makes the following findings of fact and conclusions of law, and offers the following recommendations:

Mr. Trost's testimony was, in all material respects, credible. Mr. Trost has spent approximately 38 years practicing criminal law, primarily as a defense attorney. [Id. at 5]. At the time he represented Mr. Johnson in 1996/97, Mr. Trost had practiced criminal law for approximately 22 years and had focused on criminal defense in the Northern District of Georgia for approximately the last nine of those years. [Id. at 5-6]. Mr. Trost has represented hundreds of clients. [Id. at 6].

Mr. Trost recalled specifically that Mr. Johnson faced a sentence "tantamount to life" and totaling "over a hundred years because of the stacking" of the firearms counts. [Id. at 8]. With

---

[1] The Government did not challenge the timeliness of Mr. Johnson's § 2255 motion. See [Doc. No. 162].

AO 72A
(Rev.8/82)

respect to the total sentence that Mr. Johnson faced if he was convicted at trial, Mr. Trost stated: "I'm sure I gave him that number," although he could not recall – fifteen years later – his precise wording. [Id. at 15]. In any event, it was Mr. Trost's "practice usually to provide clients copies of both the statutes as well as the applicable guidelines" as well as to review with them all discovery material and motions. [Id. at 7, 16].

When Mr. Trost received a plea offer from the Government "in the range of 25 years," he conveyed that offer to Mr. Johnson. [Id. at 8]. Mr. Trost "essentially begged him to take the deal" because the evidence arrayed against Mr. Johnson made it "a very unwinnable case." [Id. at 9-10]. Mr. Trost told Mr. Johnson "as bad as 25 years is, the alternative was a lot worse." [Id. at 10].

Mr. Trost "even tried to get [Ms. Primrose, Mr. Johnson's] mother[,] to intervene and encourage him to take the plea." [Id. at 12]. Indeed, on the eve of trial, Mr. Johnson's family hired an additional attorney who accompanied Ms. Primrose and Mr. Trost to meet with Mr. Johnson in a last-ditch attempt to persuade him to accept the 25-year plea offer. [Id. at 35-36].

Mr. Johnson's testimony, in contrast, was not fully credible on all materially disputed issues. Some of Mr. Johnson's statements – which were contradicted by Mr. Trost's testimony – simply defy belief. For example, Mr. Johnson acknowledged that Mr. Trost met

4

with him five to seven times, but stated they discussed nothing but his mental health evaluation and a single photograph depicting Mr. Johnson robbing a bank. [Id. at 26-27]. Mr. Johnson also testified that Mr. Trost "never" told him "anything about the bank robbery or gun charges" against him. [Id. at 26]. And Mr. Johnson contended that Mr. Trost "never told me anything else about the consequences of trial" other than "all they offered me was 25 years." [Id. at 24].

Other matters to which Mr. Johnson adamantly testified are contradicted by the record. For example, Mr. Johnson denied that any suppression motions were ever filed on his behalf [id. at 20], although the record reflects that a motion to suppress physical evidence and a motion to suppress statements were filed [Doc. Nos. 16, 43, 44, 49]. Similarly, although not a material misstatement, Mr. Johnson insisted that his trial started in late October [Doc. No. 170 at 25], when the record clearly reflects that it started in late September [Doc. No. 72]. When advised what the docket reflected, Mr. Johnson insisted that the docket "would be wrong." [Doc. No. 170 at 25].

Finally, Mr. Johnson contradicted his own fundamental claim in this case. After first testifying that "I said if you can get me 20 years, I would take 20 years," Mr. Johnson then testified "I would have took anything anybody offered me." [Id. at 19-20].

5

Because Mr. Johnson acknowledges he knew about the Government's 25-year plea offer and that he rejected it – which all witnesses confirmed – his statement that he "would have took anything anybody offered" is surely exaggerated if not false.

Ms. Primrose, Mr. Johnson's mother, confirmed that Mr. Trost sought her assistance in encouraging Mr. Johnson to take the 25-year plea offer and that her daughter hired an attorney to help her and Mr. Trost persuade Mr. Johnson to accept the plea offer. [Id. at 35-36]. Ms. Primrose contradicted Mr. Johnson's testimony that he "would have took anything anybody offered me," when she testified that "[h]e said he might want to think about it, but he wasn't sure." [Id. at 20, 36]. Finally, Ms. Primrose testified – not credibly – that she did not understand in 1996/97 that her son might be imprisoned for longer than 25 years if he were convicted after a trial. She specifically insisted she did not understand that her son was facing 113 years if convicted at trial. Id. Yet despite her understanding, she nevertheless urged him to accept the 25-year plea offer. [Id. at 38]. She further testified in that regard that "if we would have had one more day, a little more time, I could have convinced him [to accept the plea]." [Id. at 39].

6

# IV.

## Findings, Conclusions and Recommendations

During plea negotiations defendants are "entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970); see also Missouri v. Frye, 132 S. Ct. 1399, passim (2012). The standards for judging whether a defendant received effective assistance of counsel in plea negotiations are the familiar "performance" and "prejudice" prongs first set forth in Strickland v. Washington, 466 U.S. 668 (1984), and applied in many subsequent decisions. Hill v. Lockhart, 474 U.S. 52, 57 (1985). In the plea context, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness" to establish deficient performance. Strickland, 466 U.S. at 688. And, in the plea context, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. There is a strong presumption that counsel "rendered adequate assistance." Strickland, 466 U.S. at 690. And, "given these principles and presumptions, 'the cases in which habeas petitioners can properly prevail . . . are few and far between.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).

AO 72A
(Rev.8/82)

Even if Mr. Johnson's letter stating that he would have taken the 25-year plea offer and his self-serving testimony at the evidentiary hearing (delivered 15 years after his conviction) that he "would have took anything anybody offered me" [Doc. No. 175 at 20] could be accepted as credible, this evidence would not be adequate to overcome the presumption of effective assistance. In light of Mr. Trost's credible testimony that he advised Mr. Johnson of the total sentence he faced, provided him with copies of the relevant statutes and guidelines per his usual practice, and begged him to accept a 25-year plea offer rather than risk a 105-plus year sentence at trial("tantamount to life"), there is no basis on which to find that Mr. Trost's performance was deficient.

Mr. Trost's failure to recall the specific words he used to advise Mr. Johnson does not undermine this finding. As counsel observes in his reply brief, "[t]ime inevitably fogs the memory of busy attorneys" [Doc. No. 178 at 15 n. 5 (quoting Carrion v. Smith, 549 F.3d 583, 590 (2d Cir. 2008))], and the plea discussion about which the witnesses were testifying in 2012 occurred in 1996/97. Mr. Trost specifically testified, with respect to the total sentence Mr. Johnson faced, that "I'm sure I gave him that number." [Doc. No. 170 at 15] But even though he could not recall specifics, it would be enough that it was Mr. Trost's "practice usually to provide clients copies of both the statutes as well as the applicable

8

guidelines" [id. at 16]. After all, "professional people should be able to prove the manner in which they routinely handle matters that recur in their work, in order to show that they followed that routine in a particular instance." Dasher v. Att'y Gen., Fla., 574 F.3d 1310, 1314 (11th Cir. 2009) (internal quotation marks and citation omitted); accord Carrion, 549 F.3d at 585 ("We also conclude that it is permissible for a court to rely on habit evidence of a lawyer's usual practice in reconstructing events.").

As Judge Hunt noted, "[c]ounsel is not ineffective simply because, with the benefit of hindsight, a defendant rues his own decision to reject a plea bargain offer." [Doc. No. 165 at 11-12]. The evidence in this case indicates that Mr. Johnson was fully advised about the terms of the plea offer extended to him and the alternative outcomes he faced by going to trial. Because Mr. Trost's performance was not deficient, neither can it be said that Mr. Johnson was prejudiced by that performance. As unfortunate as it may be for him, Mr. Johnson is bound buy his decision to reject the plea offer which his appointed counsel, his mother, and his family's retained counsel all urged him to accept.[2]

---

[2] Post-conviction counsel for Mr. Johnson cites Lafler v. Cooper, 132 S. Ct. 1376 (2012), at length in his reply brief. Mr. Johnson's case, however, is clearly distinguishable from Lafler's case, which came to the Court with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance guaranteed by the Sixth Amendment. Laffler, 132

9

As Judge Hunt also noted, Mr. Johnson was found to be mentally competent to stand trial and this finding was affirmed on appeal to the Eleventh Circuit. [Doc. 165 at 4]. To the extent Mr. Johnson's post-conviction counsel contends that Mr. Johnson's "mental illness" impacts the standard applicable to the effectiveness of Mr. Trost's representation, he has cited no specific authority for this proposition. Further, the record made at the evidentiary hearing undercuts, rather than supports, his argument that Mr. Johnson, because of his mental condition, youth, and failure to graduate from high school, was entitled to "written definitions" of "terms such as 'MANDATORY' and 'CONSECUTIVE'" in order for him to have been properly informed regarding the plea offer. [Doc. No. 178 at 10-11; see also id. at 11 n.3 ("'TANTAMOUNT' also should have been defined, if counsel used this word with Mr. Johnson.")]. For example, although Mr. Johnson's post-conviction counsel argues that Mr. Johnson attended special education classes [id. at 10], Mr. Johnson himself denied any such attendance [Doc. No. 170 at 18]. And there is no dispute that Mr. Johnson attended high school through the eleventh grade. [Id.]. There was no evidence that Mr. Johnson was mentally retarded, or illiterate, or unable to understand the

---

S. Ct. at 1383. There was no such concession in this case. Furthermore, in Lafler's case counsel advised Lafler to reject the plea offer and go to trial, which he did, to his detriment. In this case, Johnson failed to take his counsel's advice.

10

proceedings against him or the nature of the plea offer. The undersigned also notes that Mr. Johnson's post-conviction counsel cites no authority for the proposition that Mr. Johnson should have been provided "written definitions" of common legal terms.[3]

The undersigned is compelled by the record to make the finding that Mr. Trost adequately advised Mr. Johnson regarding the terms of the plea offer and the alternative outcomes he faced if he insisted on going to trial. Even if he did not use the precise number "113", Mr. Trost testified that he gave Mr. Johnson his educated guess as to what his sentence would be if he was convicted on all counts [Doc. No. 170 at 15] and advised him he was facing what was tantamount to a life sentence. [Doc. No. 170 at 14]. He also advised him that he had an unwinnable case. Mr. Trost as much as begged him to take the plea, as did his mother. The advice was good advice.

Regrettably, Mr. Johnson refused to follow his counsel's advice or the advice of his mother that he should accept the 25-year plea offer rather than go to trial with, as it turned out, disastrous results. There is a certain amount of sympathy, if not force,

---

[3] The undersigned notes as well that Mr. Johnson's post-conviction counsel also cites no authority for his argument that "trial counsel was remiss for failing to inquire about and place, on the record, an informed and knowing waiver and rejection by his client of the plea offer." [Doc. No. 173 at 15].

11

generated by the argument that Mr. Johnson must have been crazy not to accept the offer of 25 years if he had been fully advised that he was facing over 100 years (or even a life sentence) and that his case was unwinnable. Therefore, in a variation on the Joseph Heller classic "Catch 22", he either must have been crazy or not fully advised by his counsel.[4] It is certainly possible that Mr. Johnson's mental state as an incipient unmedicated paranoid schizophrenic prevented him from trusting either his lawyer or his mother (or the additional counsel hired his sister). He has since apparently been diagnosed and has apparently been under medication since 1998, shortly after his conviction and sentence. [Doc. No. 170 at 28]. But he had been found by the Court to be competent to stand trial at the time and, therefore, Mr. Trost should have been entitled to rely upon this finding in advising Mr. Johnson whether or not to accept a plea.[5] [Doc. No. 170 at 12-13].

---

[4] "There was only one catch and that was Catch-22. . . Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch-22 and let out a respectful whistle." (Heller, Joseph, "Catch 22" (Simon & Schuster, N.Y. 1996, Ch. 5 at p. 56)

[5] In finding a Defendant competent to stand trial the Court must find that Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. See 18 U.S.C. § 4241(a).

12

Given the above facts and circumstances, the undersigned can find no ineffective assistance of counsel on Mr. Trost's part in advising Mr. Johnson and allowing him to make the decision. The undersigned is foreclosed from re-examining whether Mr. Johnson was competent to accept or reject the government's plea offer, as tragically unfortunate as Mr. Johnson's case may have turned out to be for him. Accordingly, in view of these findings, the undersigned must **RECOMMEND** that Mr. Johnson's ineffective assistance of counsel claim with respect to the plea offer be **DENIED**. Mr. Trost did what he was required to do in advising Mr. Johnson. He could not have coerced Mr. Johnson into taking the plea.

## V.

### Certificate of Appealability

In a § 2255 proceeding, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. § 2255, Rule 11(a). A § 2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a § 2255 movant must demonstrate "that

13

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations and quotation marks omitted). In view of the fact that the issue of Mr. Johnson's competency is foreclosed from reconsideration, Mr. Johnson cannot not demonstrate that he has been denied a constitutional right or that the issues raised in the motion are reasonably debatable, either with respect to the ground for relief discussed herein or the grounds for relief that were rejected in Judge Hunt's earlier Order.

The undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** in this case.

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

**SO FOUND, RECOMMENDED, AND DIRECTED**, this 25th day of July, 2012.

*E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

14